Wanamaker, J.
This is an original action in mandamus, by which the relators seek to compel *415 the defendant, as auditor of state, to issue his warrant upon the treasurer of state upon a voucher for $3,775, issued by the industrial commission of Ohio in favor of the relators, for the payment of three months’ rent, in advance, from the 1st day of January to the 31st day of March, 1916, for the use and occupation of quarters occupied by said commission under the terms of a lease between it and the relators.
On the 31st day of December, 1914, a paper writing was signed by the industrial commission of Ohio and the relators, whereby the latter undertook to lease to the former certain portions of an office building on High street, Columbus, Ohio, known as the “Majestic .Building,” for the period of two years, commencing on the 1st day of January, 1915, and ending on the 31st day of Decern-, ber, 1916, the agreed rentals whereof were to be paid quarterly in advance.
The industrial commission, on said January 1, 1915, took possession of said premises and has occupied the same continuously ever since said date up to and including the time of the rendition of judgment in this case, all agreeable to the terms and conditions of the lease.
On the 3d day of January, in pursuance of the covenant of the lease providing for the payment of the rent quarterly in advance, the industrial commission issued its voucher for the sum of $3,775 in payment of the rent for the current quarter. The defendant auditor of state refused to issue his warrant upon the treasurer of state therefor. Should the writ issue?
*416 There are two questions of real consequence involved in this case:
1. Did the act of the industrial commission, in signing the lease aforesaid, bind the state, or was it ultra vires? ■
2. Did the general assembly of Ohio appropriate the money necessary for the payment of the voucher it is sought to have the auditor of state issue ?
Other questions have been raised by the briefs, but boiled down they all radiate from these two cardinal questions.
The industrial commission of Ohio was created by the act of March 12, 1913 (103 O. L., 95). The act in effect consolidated the powers and duties theretofore exercised by the following departments of the state, to-wit: The liability board of awards, commissioner of labor statistics, chief inspector of mines, chief inspector of workshops and factories, chief examiner of steam engineers, board of boiler rules and state board of arbitration and possibly others.
By Section 6 of the creating act it was provided:
“The commission shall keep and maintain its office in the city of Columbus, Ohio, and shall provide suitable room or rooms, necessary office furniture, supplies, books, periodicals, maps and appliances as they deem necessary, the expense thereof to be audited and paid in the same manner as other state expenses.”
If simple English means anything, this means that the commission should rent suitable quarters *417 and that these quarters should be paid for as other state expenses.
The vast and varied functions of this department, with its numerous subdepartments and its hundreds of clerks and employes, are most vital to the public welfare of the state, and so the general assembly, believing that the commission, in the ordinary course of events, was the best judge of what would be suitable quarters, authorized it to rent or “provide suitable rooms.” It did so.
The state has taken the use and benefit of these quarters, and is continuing to do so to-day, and unless some plain, obvious constitutional provision clearly prohibits the state from carrying out its obligation, the state should not be permitted to escape its resulting burdens.
Counsel on both sides agree that the case of The State v. Medbery et al., 7 Ohio St., 522, is decisive of the issues herein involved.
The syllabus opens with the following:
“The board of public works made contracts on behalf of the state, stipulating to pay defendants in error and others yearly, for the period of five years, for materials and repairs of the canals of the state, an amount in the aggregate of $1,375,000.”
And the court held in the syllabus:
“1. That, except in certain specified cases, no debt of any kind can be created on behalf of the state. -
“2. That no officers of the state can enter into any contract, except in cases specified in the constitution, whereby the general assembly will, two *418 years after, be bound to make appropriations either for a particular object or a fixed amount — the power and the discretion, intact, to make appropriations in general devolving on each biennial general assembly, and for the period of two years.
“3: The contracts of the board of public works, creating a present obligation to pay defendants and others, for the period of five years, a certain amount, do not come within said constitutional exceptions, and are in contravention of the provisions of Article 8, Section 3, and Article 2, Section 2 [Section 22.]”
The case at bar is clearly distinguishable from the syllabus of the Medbery case, supra. In the first place, on December 31, 1914, the date of the lease, there was no “present” obligation, because by the terms of the lease it was expressly provided that the whole lease — all its terms and provisions — was subject to the appropriation by the state legislature. The language of the lease in this respect is as follows:
“This lease is made subject to the appropriation by the state legislature and the individual members of the industrial commission are relieved from all liability for the payment of rent, if such appropriation is not made.”
1. The vigorous effort to restrict this language to cover only the protection of the members of the industrial commission from personal liability is too technical and restrictive, where the language is as comprehensive as “This lease is made subject to. the appropriation by the state legislature.”
*419 2. The rent provided for in the lease is for the period of only two years, a period contemporaneous with the life of the general assembly, whose approval was necessary in order to give vitality and validity to the lease.
3. The liability which the industrial commission was authorized to incur on behalf of the state, in providing suitable quarters for its use in the state service, is not a debt within the provisions of the constitution as contended under the doctrine announced in the Medbery case.
The sovereign powers of government cannot be exercised unless suitable quarters are provided for the various governmental departments in the performance of public duty and service. This is axiomatic.
Manifestly it is within the sovereign power of the state, and particularly is it a legislative function under that sovereignty, for the general assembly to appropriately legislate so as to furnish the government and its various departments with suitable quarters.
In the exercise of this legislative power it authorized the industrial commission to provide suitable quarters, which the general assembly clearly had the right to do.
Now, did the industrial commission, in what it evidently believed to be pursuant to authority vested in it by the general assembly, in the execution of this lease transcend its authority either from the legislature or the constitution?
In construing the word “debt,” as used in the various sections of the constitution referred to in *420 the case at bar, to-wit, Sections 1, 2 and 3, Article VIII, we hold that it has no reference whatsoever to the necessary and every-day current expenses of the sovereign government itself.
In the Medbery case, supra, the contract in question involved an expense of $1,375,000 for materials and repairs on the canals, covering a period of five years. In short, it was a contract for public works — public improvements — as to which general assemblies might differ as to whether or not the expense of such improvement, especially one covering such a long period of time, or for any time .beyond the life of any one general assembly, should be incurred. It was not an expense that was inseparable, inherent and absolutely necessary to the carrying on of the governmental function of any department of government made necessary by provision of law.
The suggestion that this department might be abolished at any time by the legislature does not affect in any way the proposition that an inherent, necessary and current expense is not within the meaning of the word “debt.” The same legislature that might abandon the improvement would, in all probability, be consistent and refuse to make the appropriation for the improvement, and so in the case at bar, if the legislature had seen fit to abandon the department, the probabilities are it would have refused to make the appropriation for the department subsequent to the period of abandonment.
We believe this fully answers the constitutional objections, and we. now pass to the matter of whether or not an appropriation was made by the *421 legislature for the period covered by this warrant, to-wit, from January 1, 1916, to April 1, 1916.
A long line of authorities hold the true doctrine to be that the occupation of premises under a lease for a period of years, payable monthly or quarterly, does not fix a debt or liability for the whole amount that may become due and payable under the lease, but, upon the other hand, that such debt or liability arises only from month to month, or quarter to quarter, and becomes a debt or liability only when the use and occupation of the premises are actually furnished agreeable to the lease.
We believe that the pleadings in this case fairly admit that at least $14,000 is in the treasury of the state of the amount appropriated by the general assembly of Ohio for the payment of rent for the rooms used by the industrial commission.
It is urged, however, that while this appropriation made by the general assembly for rent of quarters for the industrial commission is still in the treasury in the amount of at least $14,000, still no part of said amount is available by reason of the limitation made upon the appropriation, to-wit, that such appropriation “shall not be expended to pay liabilities or deficiencies existing prior to July 1, 1915, or incurred subsequent to June 30, 1917.”
We have already held that a necessary current expense, duly authorized to be incurred by the general assembly, in its legislative power, is not a debt, and second, that if it were, where it is based upon the rental of premises, it does not become an existing debt in that respect until the month, quarter or year the premises are so used and occupied.
*422 We do not believe that the advance payment in anywise affects the liability of the state. Prudent landlords are requiring such advance payment from private persons in the private use of premises, and it is noteworthy that such custom generally prevails. Why the state should demand, under its constitutional rights, any special privilege or favor in this behalf we cannot understand.
The liability for which the warrant in question was sought by relators is for service in the shape of occupation and use of premises covering the period from January 1, 1916, to April 1, 1916, and therefore is not within the limitation of the exception mentioned in the act, 106 Ohio Laws, 666.
After a careful examination of the record and the briefs in this case, supplemented by able argument upon both sides, we are fully persuaded that, in good conscience and business sense, the state, by reason of its occupation and use of these premises to date, without any claim made that the lease was fraudulently procured or that the rent is excessive and unreasonable, is bound in both law and equity to assume the burdens of the contract as well as the benefits and issue its voucher to the relators as prayed for in the petition.

Writ awarded.

Nichols, C. J., Johnson, Donahue, Newman, Jones and Matthias, JJ., concur.